UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:21CR00595 HEA |
| ) | |
| NORMA CORINA ARMENTA- ) | |
| LIZARRAGA, ) | |
| ) | |
| Defendant. ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

**1.   PARTIES**

The parties are the defendant Norma Corina Armenta-Lizarraga, represented by defense counsel Gregory Smith, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.   GUILTY PLEA**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count II of the Indictment, the Government agrees that no further federal prosecution will be brought in this District relative to the incident regarding defendant's laundering of money, as detailed in this plea agreement, and of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count II, to forfeit to the United States all property subject to forfeiture under the applicable statute.

3.   **ELEMENTS**

As to Count II, the defendant admits to knowingly violating Title 18, United States Code, Section 1956, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) Beginning at an unknown time, but including 2017 and through the date of the Indictment, within the Eastern District of Missouri, the defendant and her co-defendants, and/or other persons known and unknown to the government, reached an agreement or came to an understanding to launder money by engaging in a financial transaction with money derived from drug trafficking, knowing the money came from an illegal source, with the purpose of concealing the ownership, source and nature of the funds; and

2

(b) That the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some time while it was still in effect; and

(c) That at the time the defendant joined in the agreement or understanding, she knew the purpose of the agreement.

4. **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning at a time unknown but encompassing the dates in the indictment, defendant Norma Corina Armenta-Lizarraga conspired with others to launder money, to wit: to engage in financial transactions, involving funds derived from an illegal source, to wit: drug trafficking, knowing that the funds were derived from an illegal source, to disguise and conceal the true ownership and/or source of the funds.

Co-defendant Rockette was the leader of a drug trafficking organization distributing large amounts of controlled substances including fentanyl in the Eastern District of Missouri. The controlled substances were often fronted to co-defendant Rockette such that he would pay for the drugs sometime after the drugs were delivered to him. Co-defendant Rockette accumulated a large debt for the payment of drugs delivered to him.

As part of the money laundering conspiracy, on June 4, 2018, at the direction of her then boyfriend, co-defendant Manuel Enrique Valdes-Prado, hereinafter referred to as co-defendant Prado, who she later married on or about November 2018, defendant Armenta-Lizarraga, traveled

3

from Culiacan, Mexico to the United States with the purpose and intent to open multiple bank accounts to facilitate co-defendant Prado's drug money laundering operation. Co-defendant Prado picked up drug proceeds from drug trafficking organizations and was involved in facilitating the pickup of drug proceeds from co-defendant Rockette.

Upon arrival in the United States, defendant Armenta-Lizarraga was met at the Cross Border Xpress (CBX) Terminal by one of co-defendant Prado's drug money couriers, identified as "Fernando." Fernando drove co-defendant Armenta-Lizarraga to a Bank of America (BOA) branch in Chula Vista, California, where at co-defendant Prado's instruction, defendant Armenta-Lizarraga opened two personal checking accounts ending in 2729 and 8909 to facilitate the money laundering activities. According to BOA records, defendant Armenta-Lizarraga opened the account with a $100 ATM cash deposit transaction and was the sole signatory on both personal accounts. According to BOA, defendant Armenta-Lizarraga was the only individual who had custody, control, and access to, and responsibility for, these accounts. Bank records show defendant Armenta-Lizarraga used her Non-Immigrant U.S. Visa (VBUSA 2030002669) as identification to open the accounts.

While being interviewed by bank personnel to open the accounts at BOA and provide account customer profile opening information, defendant Armenta-Lizarraga was deceptive and did not provide her telephone number and home address in Mexico, but instead provided 326 E. Street, Chula, Vista, California 91910 as her address. The 326 E. Street address was a commercial business location for Full Circle Consulting Group, Inc., a brick and mortar accounting and tax preparation tax service that co-defendant Prado used to open several shell business companies.

4

Defendant Armenta-Lizarraga also provided 333 H Street, Suite 5000, Chula, Vista, California as her mailing address. The address 333 H Street, Suite 5000, was an unknown business located inside a commercial office building. In addition, defendant Armenta-Lizarraga provided BOA personnel with telephone contact numbers 305/219-0353 and 929/230-9075 and email address grupocelebrity@gmail.com. Telephone number 305/219-0353 was associated with both Fernando and co-defendant Prado while telephone number 929/230-9075 was used by PRADO to facilitate his money laundering operation. The email address grupocelebrity@gmail.com was associated with one of co-defendant Prado's shell business companies so that the bank account could be accessed via computer from Mexico and wire the funds from the U.S to Mexico. During the BOA account activation interview, defendant Armenta-Lizarraga also identified her profession as being an accountant and stated she was employed by Star and Company, LTD., another shell business opened by co-defendant Prado with the assistance of Full Circle Consulting Group.

Following the interview and account openings, defendant Armenta-Lizarraga was given an ATM Card by the BOA branch representative, which she gave to Fernando after leaving the bank. During the 15-month period that followed (06/04/18 – 09/12/19), Fernando made 1,738 structured ATM cash deposits into defendant Armenta-Lizarraga's two accounts totaling $8,505,435 (866 cash deposits totaling $4,496,360.00 were made to the 2729 account and 877 cash deposits totaling $4,008,075 were made to the 8909 account), which cash intake represented 98.8% of all credits into defendant Armenta-Lizarraga's accounts. All of the structured deposits represented drug proceeds including drug proceeds from co-defendant Rockette. Utilizing defendant Armenta-Lizarraga's accounts concealed and disguised the nature, source, control, and ownership of the funds. Following the ATM cash deposit transactions the funds were electronically wired, via IP

5

addresses in Mexico and Panama, from defendant Armenta-Lizarraga's U.S. accounts at BOA to co-defendant Prado's Holding Entertainment account at Banco Mercantil del Norte in Mexico.

The Government's evidence at the present time reflects that defendant Armenta-Lizarraga had a minor role in the offense as while she opened the accounts, she did not deposit or direct the deposit of any of the drug proceeds into the account. Additionally, at the present time, the government has no direct evidence regarding defendant Armenta-Lizarraga's role, if any, regarding the transfer of the drug proceeds out of the account down to Mexico and the extent to which defendant Armenta-Lizarraga knew of the money transfers. While the evidence establishes that defendant Armenta-Lizarraga knew the account would be utilized for laundering drug proceeds, the evidence at the present time is unclear as to defendant Armenta-Lizarraga's knowledge of the amount of money flowing through the account. Based upon the evidence known to date, the parties have reached an agreement that defendant Armenta-Lizarraga should be held accountable for reasonably foreseeing at least $6,500 but less than $15,000 flowing through the account.

5. **STATUTORY PENALTIES**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than twenty years, a fine of not more than $500,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than three (3) years.

6. **U.S. SENTENCING GUIDELINES (2021 MANUAL)**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

a. **Chapter 2 Offense Conduct**:

(1) **Base Offense Level:** The parties agree that the base offense level is level 10, as found in Section 2S1.1 and 2B1.1. The government does not have any readily provable evidence at this time regarding defendant Armenta-Lizarraga's knowledge of the amount of money laundered through the account that she opened. The parties have reached an agreement that defendant Armenta-Lizarraga had at least minimal knowledge of money being laundered through the accounts and have agreed that she knew more than $6,500 but less than $15,000 was being laundered resulting in a two level increase pursuant to Section 2B1.1(b)(1)(B).

(2) **Specific Offense Characteristics:** The parties agree to the following with respect to the application of Specific Offense Characteristics:

(a) the defendant knew or believed that the money to be laundered were the proceeds of drug trafficking resulting in a six level increase.

(b) the parties agree that two levels should be added as the defendant is pleading guilty to an offense charged under Title 18, United States Code, Section 1956.

b. **Chapter 3 Adjustments**:

(1) **Mitigating Role:** The defendant asserts and the government's evidence at the present time reflects that the defendant had a minor role in the overall offense resulting in a two level decrease.

7

(2) **Acceptance of Responsibility**: The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

c. **Other Adjustment(s)/Disputed Adjustments**: The parties are not aware of the application of any additional adjustments apply:

d. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 13.

e. **Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea

agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

    a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

        (1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

        (2) **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining the applicable Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, adopts the agreed Total Offense Level, and sentences the defendant within or above that range.

    b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER**

    a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

    b. **Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

    c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

  **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $ 100.00, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  **f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

  **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

  The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. [Defendant specifically agrees to the forfeiture of the following: The defendant consents that the Court may enter a consent preliminary

order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS**

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.

The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful

information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA**

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

| | |
|---|---|
| 9-6-2022<br>Date | 535934O<br>_____ for J. Delworth<br>James C. Delworth<br>Assistant United States Attorney |
| 07-24-22<br>Date | _____<br>Norma Corina Armenta-Lizarraga<br>Defendant |
| 7/25/22<br>Date | Greg Smith<br>Gregory Smith<br>Attorney for Defendant |

14